UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| WINFORGE, INC. and BRYON McMAHON, | ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 1:06-cv-0619-SEB-VSS |
| COACHMEN INDUSTRIES, INC., ALL AMERICAN HOMES, LLC., and MOD-U- KRAF HOMES, LLC., | ) ) ) | |
| Defendants. | ) | |

## ENTRY GRANTING PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION

This matter is before the Court on Plaintiffs', Winforge, Inc. ("Winforge") and

Bryon McMahon ("McMahon"), request for a preliminary injunction enjoining the

scheduled sale by Defendant Coachmen Industries, Inc. ("Coachmen") of property

acquired and owned by Winforge for development of a hotel in Pigeon Forge, Tennessee

(the "Property").[1]  In 2004, Plaintiffs entered into a series of agreements with Coachmen

and its subsidiaries, All American Homes, LLC. ("All American Homes") and Mod-U-

Kraf Homes, LLC. ("Mod-U-Kraf"), whereby Coachmen was to manufacture the

components of the hotel and also agreed to finance the Winforge hotel development via a

---

[1] Plaintiffs also request a temporary restraining order; however, as Coachmen has voluntarily agreed to delay the sale for the period of time beyond what would have been the effective period of a temporary restraining order, we now consider only Plaintiffs' request for a preliminary injunction.

loan to Plaintiffs secured by a mortgage on the Property.  Coachmen now contends that Plaintiffs have breached the Loan Agreement and thus seeks a foreclosure sale of the Property under Tennessee law.  Plaintiffs allege in response that Defendants committed fraud and breach of contract and in this lawsuit seek to enjoin the foreclosure sale while this court determines the parties' contractual rights.  For the reasons explained below, we GRANT Plaintiffs' request for a preliminary injunction.

Factual Background

In early 2003, Bryon McHahon sought to develop the Wingate Inn Hotel in Pigeon Forge, Tennessee (the "Project"), forming Winforge to develop, own, and operate the Project.   Winforge acquired real estate (the "Property") on which the Project was to be developed.  Plaintiffs allege that, in April 2003, Coachmen approached McHanon with the idea of promoting the Project as the first of a series of All American Homes built hotels utilizing modular construction.  After several months of discussions and negotiations between them, Plaintiffs agreed to allow Defendants to finance the Project and manufacture the modular components.

Beginning in April 2004, the parties entered into a series of agreements whereby Defendants financed the Project and manufactured the modular components.  The loan from Defendants to Plaintiffs ,as evidenced by a Promissory Note to Coachmen, was secured by a mortgage on the Property (the "Deed of Trust").  Coachmen's performance under the Loan Agreement was contingent upon Winforge entering into a Development Agreement with Mod-U-Kraf, which they did in April 2004.

2

Plaintiffs allege that Mod-U-Kraf failed to fulfill its obligations under the Development Agreement, causing the Project to stall.  Plaintiffs further allege that, in December 2005, once Mod-U-Kraf's failure became apparent, Coachmen sent a General Release Agreement to Winforge, which Winforge refused to sign.  On February 23, 2006, Coachmen notified Winforge that it was in default under the Loan Agreement.  On March 24, 2006, Coachmen advised Winforge that it would initiate foreclosure proceedings under the Deed of Trust.[2]

On April 17, 2006, Plaintiffs filed this lawsuit seeking declaratory judgment, injunctive relief, and damages.

<u>Contract Provisions</u>

The various contract provisions relevant to our analysis of the preliminary injunction question are as follows:

A.   *The Loan Agreement*

The Loan Agreement defines "Loan Documents" to include "this Agreement and all other agreements, instruments or documents executed by Lender and/or Borrower in furtherance of the Loans, or either of them, including the Note, the Security Agreement, the Mortgage, the Environmental Indemnity Agreement, the Deposit Account Control Agreement, and the Collateral Assignment."  Loan Agreement at 5.[3]

---

[2] The Property was originally scheduled to be sold on April 21, 2006; however, based on several voluntary agreements between the parties, the sale date was postponed to May 29, 2006.

[3] It is unclear, and the parties have not specified, whether the Development Agreement is
(continued...)

The Loan Agreement further provides: "This Agreement is executed in conjunction with the other Loan Documents [the Promissory Note and Deed of Trust] and is to be construed harmoniously therewith.  If there is any conflict between the terms of this Agreement and any of the other Loan Documents, the terms of this Agreement shall control."  Loan Agreement at 9, § 1.3(g).

The Loan Agreement also provides that if there is a default by the Borrower (Winforge) then the Lender (Coachmen) may "[p]ursue any other remedy set forth in any of the other Loan Documents."  See Loan Agreement at 34-36. §§ 9.1(d), 9.2(c).

Finally, the Loan Agreement states: "This Agreement shall be governed, construed, applied, and enforced in accordance with the internal laws of the State of Indiana, without regard to its conflict of Law rules.  Any action or proceeding concerning this Agreement or the other Loan Documents or the enforcement thereof shall be commenced in the United Stated District Court for the Southern District of Indiana."  Loan Agreement at 38, § 10.3.

B.    *The Promissory Note*

The Promissory Note provides in applicable part: "This Note shall be governed, construed, applied and enforced in accordance with the internal Laws of the of the State of Indiana, without regard to its conflicts of law rules.  Any action or proceeding against Borrower concerning this Note or the enforcement of this Note may be commenced in the

---

[3](...continued)
also to be considered a "Loan Document."

United States District Court for the Southern District of Indiana, and such court shall have the sole and exclusive jurisdiction over any such proceeding."  Promissory Note at 2.

        C.     *The Deed of Trust*

The Deed of Trust stipulates that it is "[f]or the Purposes of Securing . . . [t]he due and punctual payment by Borrower of (i) the principal of an premium, if any, and interest . . . on the Loans . . ."  Deed of Trust at 2-3.

The Deed of Trust also includes that "Borrower [Winforge] hereby expressly and specifically waives any and all statutory, equitable and other rights of redemption under Tennessee or other law."  Deed of Trust at 6, § 1.1(i).

The Deed of Trust further provides: "If an Event of Default occurs . . . all remaining unpaid Secured Indebtness shall become due and payable at once, without notice, and the Trustee, or his successor in trust, is hereby authorized and empowered to sell the Property or any portion thereof in any order, and at any location specified in any notice, in accordance with T.C.A. § 35-5-101 . . . ."  Deed of Trust at 16, § 3.3.

Finally, the Deed of Trust states: "This Deed of Trust shall be governed, construed, applied and enforced in accordance with the laws of the state in which the Real Estate is located, without regard to its conflicts of law principles."  Deed of Trust at 18, § 4.4.

<u>Legal Analysis</u>

I.    *Preliminary Injunction Standard*

Plaintiffs, in seeking this preliminary injunction, have the burden of demonstrating the following three elements: (1) that it has a reasonable likelihood of success on the

merits of its underlying claim, (2) that it has no adequate remedy at law, and (3) that it will suffer irreparable harm without the preliminary injunction.   See AM General Corp. v. DaimlerChrysler Corp., 311 F.3d 796, 803 (7th Cir. 2002).  In conducting our initial analysis, "the court decides only whether the plaintiff has any likelihood of success–in other words, a greater than negligible chance of winning." Id. at 804 (citing Washington v. Indiana High Sch. Ath. Ass'n, 181 F.3d 840, 845 (7th Cir. 1999)).

If Plaintiffs satisfy those requirements, the court must next consider any irreparable harm a preliminary injunction might impose on Defendants and whether the preliminary injunction would harm or foster the public interest.  Id. at 803-04(citing Anderson v. U.S.F. Logistics (IMC), Inc., 274 F.3d 470, 474 (7th Cir. 2001); Re/ Max North Central, Inc. v. Cook, 272 F.3d 424, 429-30 (7th Cir. 2001)).  During this phase of our analysis, "the court evaluates that likelihood of success . . . as the analysis turns to a 'sliding scale' under which a lesser likelihood of success can be made sufficient by a greater predominance of the balance of harms." Id. at 804 (citing Ty, Inc. v. The Jones Group, Inc., 237 F.3d 891, 895 (7th Cir. 2001); Eli Lilly & Co. v. Natural Answers, Inc., 233 F.3d 456, 461 (7th Cir. 2000); Storck USA, L.P. v. Farley Candy Co., 14 F.3d 311, 314 n. 1 (7th Cir. 1994)).  However, "[a] party with no chance of success on the merits cannot attain a preliminary injunction." Id. (citing Kiel v. City of Kenosha, 236 F.3d 814, 815 (7th Cir. 2000)).  In performing the sliding-scale analysis, "the court bears in mind that the purpose of a preliminary injunction is 'to minimize the hardship to the parties pending the ultimate resolution of the lawsuit.'" Id. (quoting Platinum Home Mortgage

6

Corp. v. Platinum Financial Group, Inc., 149 F.3d 722, 726 (7th Cir. 1998)).

II.     *Prerequisites to Injunctive Relief*

Initially, Plaintiffs must demonstrate: (1) they have a non-negligible chance of prevailing on the merits; (2) they have no adequate remedy at law; and (3) they will suffer irreparable harm without a preliminary injunction.

A.     *Non-Negligible Chance of Prevailing on the Merits*

Plaintiffs have introduced through affidavits their factual basis for their breach of contract and fraud claims against Defendants.  Defendants have not yet contested any of Plaintiffs' factual assertions; thus, we assume the asserted facts are true.  On that basis, we conclude that Plaintiffs have adequately demonstrated their non-negligible chance of prevailing on the merits.[4]

B.     *No Adequate Remedy at Law and Irreparable Harm*

We consider the next two elements together based on the longstanding rule in the Seventh Circuit that the loss of a particular piece of land constitutes an irreparable injury for which there are no adequate remedies at law.  See United Church of the Medical Center v. Medical Center Com'n, 689 F.2d 693, 701 (7th Cir. 1982) ("It is settled beyond the need for citation, however, that a given piece of property is considered to be unique,

---

[4] Although Plaintiffs nominally argue they have a likelihood of success on Count IX, which is premised on their assertion that Coachmen must follow Indiana law in foreclosing on the Property, their preliminary injunction briefs incorporate their fraud and breach of contract claims as well.  Moreover, as discussed below, we conclude, but for reasons other than those asserted in Plaintiffs' Count IX, that a judicial determination of the parties' rights and obligations under Indiana law must occur before Coachmen is allowed to foreclose on the property.

and *its loss is always an irreparable injury*. Substitution of another piece of property cannot cure the loss of one's property . . . ."(emphasis added)); see also U.S. v. Davenport,  106 F.3d 1333, (7th Cir. 1997) ("The injury occasioned by an erroneous sale of the Davenports' property could be remedied neither by the prior posting of a bond nor by a later award of damages, because the Davenports' interests lie not only in the economic value of the house, but in the specific loss of their marital residence. There can be no questioning the possibility of irreparable harm in this instance."); Pelfresne v. Village of Williams Bay, 865 F.2d 877, 883 (7th Cir. 1989) ("As a general rule, interference with the enjoyment or possession of land is considered 'irreparable' since land is viewed as a unique commodity for which monetary compensation is an inadequate substitute.").  The conclusion that Plaintiffs have no adequate remedy at law is further underscored by the fact that the Deed of Trust contains a waiver of any rights of redemption Plaintiffs would otherwise possess under Tennessee law.  Accordingly, we are satisfied that Plaintiffs have established the second and third elements necessary for obtaining a preliminary injunction.  We proceed next to the secondary analysis concerning the balancing of harms.

III.    *Secondary Analysis*

        This step of our analysis focuses on whether any irreparable harm would be imposed on the Defendants and whether the entry of a preliminary injunction would harm or foster the public interest.  Here we are required to evaluate the likelihood of success on a "'sliding scale' under which a lesser likelihood of success can be made sufficient by a

greater predominance of the balance of harms." <u>AM General Corp.</u>, 311 F.3d at 804.  We address each of these points below, somewhat impeded in doing so by the Defendants' failure to address specifically any of these points.

     A.   *Irreparable Harm to Defendants*

Defendants have not argued this point in their brief.  Accordingly, we assume that any harm Defendants might suffer would be cured or otherwise indemnified against by a bond posted by Plaintiffs.

     B.   *Public Interest*

Plaintiffs' public interest argument is that Coachmen is obligated to follow Indiana law before foreclosing on the Property, which assertion we generally find lacking for the reasons discussed below.  After careful analysis, we conclude that in terms of the public interest the arguments are a wash between the parties.

     C.   *Sliding Scale*

Finally, we address the balance of harms as weighed on a sliding scale against the likelihood of success on the merits.

     1.   *Balance of Harms*

In our considered view, the balance of harms tips decidedly in favor of Plaintiffs. As discussed in Section II(B), <u>supra</u>, Seventh Circuit precedent has long held that the potential loss of land "is always an irreparable injury."  <u>United Church of the Medical Center</u>, 689 F.2d at 701.  In addition, the underlying purpose of incorporation for Winforge was to own, develop, and manage a hotel on the Property, which, if foreclosed

upon by Coachmen, would result in immeasurable harm to Plaintiffs without any opportunity for Plaintiffs to establish the legal merits of their own opposition to foreclosure.  In contrast to these obvious and substantial potential harms, Defendants have presented no argument or evidence to show that they will suffer any appreciable harm by a delay of Coachmen's foreclosure sale of the Property.  The harms resulting to Plaintiffs outweigh those to Coachmen, reducing the need for Plaintiffs to establish their likelihood of success on the merits in order to obtain a preliminary injunction.

2.    *Likelihood of Success*

The parties' submissions, Defendants' in particular, focus almost exclusively on which state's law, Indiana or Tennessee, governs issues arising under the Deed of Trust, and whether Coachmen is obligated to comply with Indiana law before foreclosing on the Property.  As discussed below, we conclude that Tennessee law does govern the Deed of Trust, but that the need for a judicial determination of the parties' rights under Indiana law must precede Coachmen's foreclosure on the Property.[5]

a.    *Tennessee Law Governs the Deed of Trust.*

Plaintiffs erroneously base their claim that they have a substantial likelihood of success on the choice-of-law provision in the Loan Agreement, contending that it governs the Deed of Trust as well.  According to § 187 of the Restatement (Second) of Conflict of

---

[5] Although the outcome of this analysis requiring a judicial determination under Indiana law of the parties' rights and obligations is consistent with Plaintiffs' arguments, our reasons we are materially different than those asserted in Plaintiffs' Count IX.

Laws, parties to a contract are generally free to choose the state law they wish to have

govern their agreement (subject to certain limitation which do not appear to apply to the

facts before us).[6]  Comment (i) to § 187 explains that:

> *the parties may choose to have different issues involving their
> contract governed by the local law of different states*. The parties'
> power is unlimited in the case of issues lying within their contractual
> capacity, i.e., issues that the parties could have resolved by an
> explicit provision in their agreement directed to that issue. (See
> [§ 187(1)]) As to other issues, i.e., issues which the parties could not
> have resolved by an explicit provision in their agreement, the parties'
> power to choose to have different issues governed by the local law of
> different states is subject to the limitations imposed by [§ 187(2)].

---

[6] Section 187 provides, in pertinent part:

(1) The law of the state chosen by the parties to govern their contractual
rights and duties will be applied if the particular issue is one which the
parties could have resolved by an explicit provision in their agreement
directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual
rights and duties will be applied, even if the particular issue is one which
the parties could not have resolved by an explicit provision in their
agreement directed to that issue, unless either

> (a) the chosen state has no substantial relationship to the parties or
> the transaction and there is no other reasonable basis for the
> parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to
> a fundamental policy of a state which has a materially greater
> interest than the chosen state in the determination of the particular
> issue and which, under the rule of § 188, would be the state of the
> applicable law in the absence of an effective choice of law by the
> parties.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1988).

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 cmt. i (1988) (emphasis added).

Both Indiana and Tennessee apply the Restatement (Second) of Conflict of Laws,

allowing the parties to choose the state(s) whose law will govern their contractual

obligations.  See Allen v. Great American Reserve Ins. Co., 766 N.E.2d 1157, 1162 (Ind.

2002) (stating:  "Indiana choice of law doctrine favors contractual stipulations as to

governing law." (internal citations omitted)); Goodwin Bros. Leasing, Inc. v. H & B Inc.,

597 S.W.2d 303, 306 (Tenn. 1980) (holding:  "the settled law of Tennessee [is] that

parties ordinarily are free to contract that the law of some jurisdiction other than that of

the place of making will govern their relationship. In previous cases such a stipulation has

been sustained when made in good faith and when the other state had some material

connection with the transaction.").[7]  Although our research has disclosed no case in either

jurisdiction which specifically references Comment (i), we have no basis to believe that

either Indiana or Tennessee would prohibit parties from choosing separate state laws to

govern distinct parts of their contractual obligations.

    Accordingly, contrary to Plaintiffs' assertions, we conclude that there is no

inherent conflict between the Loan Agreement terms which make its interpretation and

---

[7] See also Vantage Technology, LLC v. Cross, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999) (explaining: "If the parties manifest an intent to instead apply the laws of another jurisdiction, then that intent will be honored provided certain requirements are met.  The choice of law provision must be executed in good faith.  The jurisdiction whose law is chosen must bear a material connection to the transaction.  The basis for the choice of another jurisdiction's law must be reasonable and not merely a sham or subterfuge.  Finally, the parties' choice of another jurisdiction's law must not be contrary to a fundamental policy of a state having a materially greater interest and whose law would otherwise govern. (Internal quotations and citations omitted)).

enforcement subject to Indiana law and the Deed of Trust being tied to Tennessee law. This conclusion, however, does not end our inquiry.

        b.    *Enforcement of the Deed of Trust Cannot Be Separated from the Loan Agreement and/or Promissory Note.*

Defendants contend that the request for a preliminary injunction must be denied because "Tennessee law, which the parties agreed would govern the enforcement of the Deed of Trust, specifically permits Coachmen to enforce the Deed of Trust without first obtaining a judicial determination as to the existence and amount of Winforge's obligations under the Note." Defs.' Resp. Brief at 6. This argument clearly overstates Coachmen's rights under the Loan Documents in at least two critical respects.

First, this court properly was vested with sole jurisdiction over the parties' dispute by the parties themselves. In the plain language of the Loan Agreement: "Any action or proceeding concerning this Agreement or the other Loan Documents or the enforcement thereof shall be commenced in the United States District Court for the Southern District of Indiana, and such court shall have the sole and exclusive jurisdiction over any such proceeding." Loan Agreement § 10.3. It is undisputed that: (1) Coachmen is seeking to enforce the Deed of Trust and/or other Loan Documents; (2) Coachmen did not initiate any proceeding in the Southern District of Indiana before attempting to enforce said documents; and (3) Plaintiffs have brought this lawsuit relating to the Loan Documents. The parties neither briefed nor otherwise argued whether Coachmen's proposed sale of the Winforge property would constitute an "action or proceeding," as contemplated by the

13

Loan Agreement; however, according the terms of the Loan Agreement, now that

Plaintiffs have brought their lawsuit, this court has sole jurisdiction over all actions and

proceedings concerning the Loan Documents.  If Coachmen were permitted to

unilaterally determine the parties' rights and obligations through an extrajudicial sale of

the Winforge property, the parties' expressed intention to vest this court with "sole

jurisdiction" would be a meaningless.

  Second, Coachmen cannot hope to be permitted to separate enforcement of the

Deed of Trust from a determination of the parties' rights and obligations under the other

Loan Documents, which are required to be construed under Indiana law.  Defendants

contend that Coachmen is only attempting to "enforce the Deed of Trust, which it is doing

in accordance with Tennessee law pursuant to the express terms of the Deed of Trust" and

that it "is not attempting at this time to enforce the Loan Agreement or the Note by filing

suit against Winforge."  Defs.' Resp. Brief at 4-5.  This argument, however, cuts too fine

a line.  According to the Deed to Trust, the remedies under Tennessee law, which

Coachmen seeks to pursue, become available only after an "Event of Default."  The only

"Events of Default" known to the Court pertain to alleged breaches of the Loan

Agreement;[8] Plaintiffs' declaratory judgment claim, however, asserts that they have no

further obligations under Loan Documents, including the Loan Agreement, as a result of

---

  [8] See, e.g., Pls.' Ex. 13 at 1, Letter from Coachmen to Winforge (stating: "As you know, numerous Events of Default currently exist under the above-referenced Loan Agreement. . . .  By virtue of Winforge's defaults under the Loan Agreement, Coachmen is entitled to, among other things, . . . exercise its rights under the Deed of Trust.").

Defendants' prior fraudulent conduct and breach of contract.  Therefore, a material dispute exists between the parties as to whether the Loan Agreement has been breached and, if so, by whom; these questions must be resolved prior to any foreclosure sale and must be resolved under Indiana law.  We know of no alleged "Event of Default" which does not require a judicial determination by this court respecting the rights and obligations of the parties under their contract which, we repeat, is expressly governed under Indiana.

To allow Coachmen to foreclose on the Winforge property and then follow with a judicial determination as to whether Coachmen had the contractual right to conduct such a foreclosure puts the proverbial cart before the horse.  Once the parties' rights and obligations under the Loan Agreement and/or Promissory Note are resolved in accordance with Indiana law and their agreement, Coachmen may, if it is determined that Coachmen is entitled to do so, proceed with to foreclosure of the Winforge property, pursuant to Tennessee law.[9]

---

[9] Defendants cite several cases they stand for the simple proposition that a secured lender may either sue on the promissory note or foreclose on the mortgage.  See, e.g., Hensicker v. Lamborn, 13 Ind. 468 (1859); Stanley v. Beatty, 4 Ind. 134 (1853); National City Bank of Indiana v. Morris, 717 N.E.2d 934 (Ind. Ct. App. 1999); First Indiana Federal Savings Bank v. Hartle, 567 N.E.2d 834, 837 (Ind. Ct. App. 1991); Lewis v. Davis, 55 N.E.2d 119, 120 (Ind. Ct. App. 1944).  These cases, however, do not stand for the proposition that a secured party may foreclose on a property when, at the same time, a court is determining the validity of the debt the property was used to secure.  Instead, as a Tennessee court explained, "[I]t is a widely accepted general rule that a mortgage or deed of trust and a note or bond secured by it are to be deemed parts of one transaction and construed together as such; the provisions of both should be given effect, if possible, and the intention of the parties as determined from an examination of both, not from one separately, must prevail."  Ferguson v. Peoples Nat. Bank of LaFollette, 800 S.W.2d

(continued...)

15

<u>Conclusion</u>

For the reasons elaborated above, we conclude that Plaintiffs have satisfied the requirements necessary for a preliminary injunction.  A preliminary injunction against the sale of the Winforge Property by Defendants or their agents is thus hereby entered. Further, we hold that Plaintiffs must post a bond within fifteen days in an amount sufficient to cover the value of the Winforge Property and any potential depreciation to the Property that might occur during the term of the preliminary injunction.

IT IS SO ORDERED.


Date:    05/26/2006                                    _Sarah Evans Barker_
                                                        SARAH EVANS BARKER, JUDGE
                                                        United States District Court
                                                        Southern District of Indiana


Copy to:

Brent Emerson Inabnit
SOPKO NUSSBAUM & INABNIT
brenti@sni-law.com

Christopher M. Keefer
SOPKO NUSSBAUM & INABNIT
chrisk@sni-law.com

Richard Charles Richmond III
SOMMER BARNARD ATTORNEYS, PC
richmond@sommerbarnard.com

_____

[9](...continued)
181, 183 (Tenn. 1990)

16