UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WINFORGE, INC. and BYRON McMAHON,<br>      Plaintiffs,<br><br>  vs.<br><br>COACHMEN INDUSTRIES, INC., ALL AMERICAN HOMES, LLC, AND MOD-U-KRAF HOMES, LLC,<br>      Defendants. | )<br>)<br>)<br>)    1:06-cv-619-SEB-JMS<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

Now before the Court is the Motion to Dismiss [Docket No. 27] filed by Defendants, Coachmen Industries, Inc. ("Coachmen"), All American Homes, LLC ("All American"), and Mod-U-Kraf Homes, LLC ("Mod-U-Kraf") (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6). This case involves a dispute over property upon which Plaintiffs, Winforge, Inc. ("Winforge") and Byron McMahon ("McMahon"), intended to build a hotel development, prompting them to enter into contractual agreements with Defendants in furtherance of that goal. After the contractual relationships between Plaintiffs and Defendants deteriorated, Plaintiffs brought this action alleging as to the Defendants claims of fraud, constructive fraud, breach of contract, and failure to properly commence foreclosure proceedings under Indiana law. For the reasons detailed in this entry, we <u>GRANT</u> Defendants' Motion to Dismiss as to Counts One

1

through Six, as to Count Seven to the extent it purports to state a claim on behalf of Byron McMahon, and as to Count Ten.  We DENY Defendants' Motion to Dismiss as to Count Nine.[1]

### *Factual and Procedural Background*

The underlying facts of this case have been previously outlined by us in our prior entries; we repeat them here to the extent that they provide relevant background for our present rulings.  Plaintiff Byron McMahon is a North Carolina resident; Winforge is a North Carolina corporation formed by Mr. McMahon.  Coachmen is an Indiana corporation engaged in the business of building modular homes.  All American is a subsidiary of Coachmen, and Mod-U-Kraf is a subsidiary of All American.  Compl. ¶¶ 1-5.

---

[1] We note from the outset that both parties have raised what are essentially "law of the case" arguments based on our prior rulings in this cause.  Plaintiffs maintain that our order granting them injunctive relief – based in part on a non-negligible chance of prevailing on the merits – precludes a holding that their Complaint fails to state claims as to certain counts.  See Pls.' Resp. at 8-9.  Defendants argue that our order granting in part their Motion for Relief from the injunction rejected Plaintiffs' theory of relief as to Counts Nine and Ten.  See Defs.' Reply at 7.

Neither argument precludes us from thoroughly reviewing all parties' assertions at this stage of the proceedings.  The standard of review for granting preliminary injunctive relief is wholly separate from that governing dismissal of claims, and thus does not foreclose a full analysis at this juncture.  Further, we now have the benefit of additional briefings by all parties.  Therefore, we do not consider our earlier rulings to limit our ability to analyze anew the arguments at issue here; and, even assuming that the law of the case doctrine applied, it is a discretionary doctrine, which does not limit courts' power to disregard earlier holdings in appropriate cases.  See Castro v. United States, 540 U.S. 375, 384 (2003); Avitia v. Metropolitan Club of Chicago, Inc., 49 F.3d 1219, 1227 (7th Cir. 1995) ("The doctrine of law of the case . . . is no more than a presumption, one whose strength varies with the circumstances; it is not a straitjacket.").

In early 2003, McMahon sought to develop the Wingate Inn Hotel in Pigeon Forge, Tennessee. He acquired real estate on which to he intended to build and formed the Winforge corporation as the entity to develop, own, and operate the project. In April of 2003, Coachmen approached McMahon offering to promote the development as the first of a series of All American-built hotels utilizing modular construction. After several months of negotiations, Plaintiffs and Defendants entered into a series of agreements whereby Defendants agreed to finance Winforge and manufacture the modular components. Among these agreements was a Loan Agreement, signed on April 14, 2004, in which Coachmen loaned the necessary capital to Winforge (see Loan Agreement, Ex. 1; Promissory Note, Ex. 2). That loan was secured by a mortgage on the property (see Deed of Trust, Ex. 3) and a security interest in Winforge's assets (see Security Agreement, Ex. 4), and was personally guaranteed by McMahon's promise that Winforge would make timely payment(s) on the loan (see Guarantee, Ex. 5). As required in the Loan Agreement, Winforge also entered into a Development Agreement (Ex. 6) with Mod-U-Kraf whereby Mod-U-Kraf agreed, among other steps necessary to the development of the hotel, to perform construction, provide labor and materials, and create or secure licensing agreements.

Thereafter, Plaintiffs allege, Mod-U-Kraf failed to fulfill its obligations under the Development Agreement – specifically failing to prepare and/or receive necessary governmental approvals related to plans and specifications for the building, and failing to manufacture the required modular components. Compl. ¶ 26. Plaintiffs allege that, in

December 2005, once Mod-U-Kraf's failures became apparent, Coachmen sent a General Release Agreement to Winforge (Ex. 11), which Winforge refused to execute. On February 13, 2006, the City of Pigeon Forge provided notice that it would not issue a building permit for the project due at least in part to potential problems in connecting the hotel to the sewer system. See Ex. 12.

On February 23, 2006, Coachmen informed Winforge that it was in default of the loan for its failure to timely repay the loan and based on the refusal of the City of Pigeon Forge to issue a building permit for the project. Coachmen asserted that, under their agreements, it was entitled to take over and complete construction of the hotel at its own risk and expense. See Ex. 13.

On March 24, 2006, Coachmen advised Winforge that it would initiate foreclosure proceedings pursuant to the Deed of Trust. Plaintiffs responded (on April 17, 2006) by filing this lawsuit and seeking to enjoin the foreclosure sale. We granted a preliminary injunction to stay the sale, conditioned on Plaintiffs' posting a bond in the amount of $1.4 million.[2] Plaintiffs were unable to do so within the allotted time period and so, on September 22, 2006, we reduced the amount of the required surety by ordering Plaintiffs to post bond in the amount of $500,000.00 by no later than October 2, 2006, warning that a failure to do so would result in the dissolution of the injunction. Again, Plaintiffs did not post the required bond, and we dissolved the injunction on October 5, 2006.

---

[2] After a hearing on July 19, 2006, we permitted Plaintiffs to substitute a letter of credit for a bond.

Here, in this entry, we address the Motion to Dismiss filed by Defendants on June 9, 2006. Defendants' motion raises three grounds for dismissal of various counts of the Complaint. As to Counts One through Six, which allege fraud and constructive fraud against each Defendant, Defendants assert that Plaintiffs have not stated their claims with sufficient particularity under Federal Rule of Civil Procedure 9(b). As to Count Seven – a claim for breach of the Development Agreement – Defendants contend that it fails to state a claim upon which relief can be granted as to McMahon, because McMahon was neither a party to nor a third-party beneficiary of the contract between Winforge and Mod-U-Kraf. As to Counts Nine and Ten, Defendants maintain that they have fully complied with all applicable statutory requirements regarding foreclosure of the property and no further relief is available against them. We address below each of Defendants' arguments.

## *Legal Analysis*

### I.   *Standard of Review*

Defendants' motion pursuant to Federal Rule of Civil Procedure 12(b)(6) seeks the dismissal of certain counts of the Complaint for their failure to state a claim upon which relief may be granted. A party moving to dismiss bears a weighty burden. It must show that the pleadings themselves fail to provide a basis for any claim for relief under any set of facts. Ed Miniat, Inc. v. Globe Life Ins. Group Inc., 805 F.2d 732, 733 (7th Cir. 1986), cert. denied, 482 U.S. 915 (1987).

As a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in

the case in which the allegations of the complaint clearly demonstrate that a plaintiff does not have a claim.  Owner-Operator Indep. Drivers Ass'n v. Mayflower Transit, Inc., 161 F. Supp. 2d 948, 951 (S.D. Ind. 2001) (citing 5A Charles A. Wright and Arthur R. Miller, Federal Practice & Procedure: Civil § 1357).  In addressing a Rule 12(b)(6) motion, we treat all well-pleaded factual allegations as true, and we construe all inferences that reasonably may be drawn from those facts in the light most favorable to the nonmovant.  Lee v. City of Chicago, 330 F.3d 456, 459 (7th Cir. 2003); Szumny v. Am. Gen. Fin., 246 F.3d 1065, 1067 (7th Cir. 2001).

## *II.     Counts One through Six: Fraud and Constructive Fraud*

Counts One through Six of Plaintiffs' Complaint allege claims of fraud and constructive fraud against each defendant.[3]  The Complaint charges that, during the time

---

[3] Counts One, Three, and Five, which allege fraud, each allege identical conduct against one of the three defendants.  These claims state, in relevant part, that:

> On numerous occasions, [each defendant] represented and warranted that: (a) Mod-U-Kraf was obligated to prepare the Plans and Specifications; (b) Mod-U-Kraf was obligated to receive all state and locla approvals for the Project, including, but not limited to, approvals related to the Plans and Specifications; (c) Mod-U-Kraf had in fact prepared said Plans and Specifications; (d) Mod-U-Kraf was obligated to manufacture in a timely manner modular components in accordance with the Plans and Specifications; (e) Mod-U-Kraf had the capability to manufacture the modular components in a timely manner in accordance with the Plans and Specifications; and (f) Mod-U-Kraf had in fact begun the production process.
>
> [Each defendant's] representations were false and misleading.

6

period between April 2003 and April 2004, "Defendants made numerous representations and warranties with regard to the Project" in the course of negotiating the contracts among the parties, among which were that: Mod-U-Kraf was obligated to prepare Plans and Specifications related to the project, to manufacture the necessary modular components, and to obtain proper governmental approvals for the project; that Mod-U-Kraf was capable of manufacturing the modular components in a timely manner; and that Mod-U-Kraf had, in fact, prepared the Plans and Specifications.  Compl. ¶¶ 10-11.  The Complaint alleges that these representations occurred "on numerous occasions in person and over the telephone.  Upon information and belief, Defendants made these representations and warranties in Indiana and/or Virginia."  Id. ¶ 12.  Plaintiffs assert that their decision to go forward with forming contracts with Defendants was made in reliance upon these

---

> [Each defendant] made said representations either knowing them to be false or with reckless ignorance of their falsity.
>
> Plaintiffs relied upon the representations to their detriment.
>
> As a direct and proximate result of [each defendant's] misrepresentations, Plaintiffs have been damaged.

Counts Two, Four, and Six, which allege constructive fraud, also each allege identical conduct against one of the three defendants.  These claims state in relevant part that:

> [Each defendant] benefitted from the misrepresentations it made to Plaintiffs.
>
> As a direct and proximate result of [each defendant's] actions, Plaintiffs have been damaged.

Compl. ¶¶ 34-60.

7

representations and warranties. Id. ¶ 13.

In addition, after entering into these contractual relationships with Defendants, Plaintiffs allege that, from April 14, 2004, to December 2005, "Defendants represented and warranted to Plaintiffs that Mod-U-Kraf had: (a) completed Plans and Specifications; and (b) begun the production process." Id. ¶ 19. The Complaint further asserts that these representations occurred on numerous occasions in person, in writing, and over the telephone, and that, upon information and belief, Defendants made these representations and warranties in Indiana, Virginia, and/or Tennessee. In reliance upon these representations, Plaintiffs allowed Defendants to continue funding the project and manufacturing the modular components, and also entered into four separate amendments to the Loan Agreement which extended the repayment period for the construction loan. Id. ¶¶ 20-22. Plaintiffs assert that these representations and warranties by Defendants were later shown to be false and that they constitute fraud and constructive fraud, as alleged in the Complaint.

Defendants move to dismiss these counts for failure to comply with Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity."[4] In general, the

---

[4] We note that, because Rule 9(b) applies to *averments* (not *claims*) of fraud, Defendants' motion to dismiss on this ground is equally applicable to the three counts of constructive fraud contained within the Complaint. See Lewis Borsellino and I.M. Acquisitions, LLC v. Goldman Sachs Group, Inc., ___ F.3d ___, 2007 WL 509385 at *3 (7th Cir. Feb. 20, 2007) ("A claim that 'sounds in fraud' – in other words, one that is premised upon a course of fraudulent conduct – can implicate Rule 9(b)'s heightened pleading requirements.").

statement of a claim need only be sufficient to give the opposing party notice of the claim. See Fed. R. Civ. P. 8; Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512-13 (2002). However, Rule 9(b) mandates a heightened pleading requirement for averments of fraud, in "response to the great harm to the reputation of a business firm or other enterprise a fraud claim can do." Lewis Borsellino and I.M. Acquisitions, LLC v. Goldman Sachs Group, Inc., ___ F.3d ___, 2007 WL 509385 at *3 (7th Cir. Feb. 20, 2007) (internal quotation marks omitted).

Therefore, a plaintiff "'claiming fraud . . . must do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate.' . . . A complaint alleging fraud must provide . . . 'the who, what, when, where, and how.'" Id. (quoting Payton v. Rush-Presbyterian-St. Luke's Med. Ctr., 184 F.3d 623, 627 (7th Cir. 1999)). These requirements of particularity compel a plaintiff to state "the identity of the person who made the misrepresentation, the time, place, and contend of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Jepson, Inc. v. Makita Corp., 34 F.3d 1321, 1327 (7th Cir. 1994) (internal quotation marks omitted).

Defendants here assert that Plaintiffs fail to state the "who, what, when, where, and how" of their fraud and constructive fraud allegations with the requisite particularity. Each count of fraud and constructive fraud attempts to attribute liability to the company as such; the names of specific individuals within those companies who allegedly made such representations are nowhere to be found. Moreover, Defendants argue, the Complaint fails

to allege with any specificity the claimed (mis)representations made, including instead such language as "numerous representations" on "numerous occasions," "in person and over the telephone," "in Indiana and/or Virginia." Defendants assert that such vague descriptors are insufficient to put them on notice of the precise misrepresentations alleged to have been made, when they were made, by whom, to whom, etc.

Plaintiffs respond that Rule 9(b) does not require them to provide Defendants, in essence, with a pretrial memorandum containing all possible evidentiary support for Plaintiffs' case. See Uniroyal Goodrich Tire Co. v. Mutual Trading Corp., 749 F.Supp. 869, 872 (N.D. Ill. 1990). Further, Plaintiffs argue that the rule's requirements are relaxed when certain facts are within a defendant's sole possession or control and thus are inaccessible to them. See Jepson, 34 F.3d at 1329. Therefore, Plaintiffs assert, their fraud and constructive claims satisfy the heightened pleading requirement imposed by Rule 9(b), and do not require dismissal.

It is true that, where defendants are all "corporate insiders," the requirements of Rule 9(b) may be somewhat relaxed. See Uniroyal, 749 F.Supp. at 872. However, even where the defendants are "corporate insiders," the particularity requirement is loosened only if "the complaint sufficiently describes the fraudulent acts and provides the individuals with sufficient information to answer the allegations." Id. (internal quotation marks omitted). Plaintiffs have not met their burden in this regard. Plaintiffs' fraud and constructive fraud claims are premised on representations allegedly made over the course of approximately two-and-a-half years (April 2003 to April 2004 *and* April 14, 2004 to

December 2005), through various methods of communication, and from various locations. Their complaint contains not a single, specific date, name, or representation, over the course of those years, which they maintain were fraudulent. Without more specifics, Defendants cannot be expected to parse all communications that occurred between themselves (three large companies) and Plaintiffs in order to determine which might possibly qualify as fraudulent in Plaintiffs' opinion.

Plaintiffs have also failed to demonstrate that the necessary facts are within the exclusive control of Defendants. Plaintiffs contend that they "do not know the full names of all the individuals who communicated each misrepresentation. That information is in Defendants' sole possession and is inaccessible to Plaintiffs." Pls.' Resp. at 5 fn. 3. Surely Plaintiffs – whose claims stem at least in part from alleged *conversations* between Defendants and themselves, in person, in writing, and over the telephone – have access to at least *some* more specific information about the alleged misrepresentations, if nothing more than (even approximate) dates, times, first or last names of specific individuals, or other identifiers. To the extent that some of the alleged misrepresentations were made during such two-way conversations between the parties, it is clear that not all the necessary facts are within Defendants' exclusive control.

In addition, Defendants are effectively "lumped together" in the Complaint. In the section of the Complaint entitled "Allegations Common to All Counts," all discussions of the alleged misrepresentations are attributed to "Defendants" as a group. Each count, One through Six, alleging fraud and constructive fraud names a Defendant individually – but,

Case 1:06-cv-00619-SEB-WGH   Document 72   Filed 03/13/07   Page 12 of 16 PageID #: 733

as described in footnote 2, *supra*, each count also alleges identical conduct (substituting only a Defendant's name) against each of the three Defendants. Thus, the alleged fraudulent conduct of one Defendant is wholly indistinguishable from that of another. Under Rule 9(b), a claimant must make specific and separate allegations against each defendant; "[a] complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient." Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990). See also Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2nd Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'").

Therefore, because Counts One through Six of the Complaint do not satisfy the heightened pleading requirements of Rule 9(b), Defendants' Motion to Dismiss is GRANTED as to those Counts.[5]

### III.    *Count Seven: Breach of the Development Agreement*

Count Seven of the Complaint asserts that Mod-U-Kraf breached its contractual obligations under the Development Agreement, and that Coachmen and All American knowingly and intentionally assisted in the breach. As a result, the Plaintiffs claim that they all have been damaged. Compl. ¶¶ 63-65.

Defendants move to dismiss this claim to the extent that it purports to state a claim

---

[5] Because the lack of particularity in the Complaint is a sufficient grounds for dismissal of these Counts, we do not address the other arguments raised by the parties as to these counts.

12

on behalf of McMahon. Defendants assert that McMahon was not a party to the Development Agreement between Winforge and Mod-U-Kraf, nor was he a third-party beneficiary of the contract, as the contract was not clearly intended to render a benefit to him. See Luhnow v. Horn, 760 N.E.2d 621, 629 (Ind. Ct. App. 2001). An incidental benefit, without such an intent manifested within the terms of the contract, is insufficient to confer upon McMahon the status of a third-party beneficiary. Id. at 630.

Plaintiffs respond explaining that the Development Agreement is one of the "Loan Documents," as defined in the Loan Agreement, and that "Plaintiffs' Complaint alleges that McMahon is a party to the Loan Documents[.]" Pls.' Resp. at 8. Plaintiffs contend that, at this stage of the proceedings, this allegation is sufficient to withstand Rule 12(b)(6) scrutiny.

Defendants have correctly stated the controlling law: McMahon, as an individual, lacks standing to sue on a claim for breach of the Development Agreement. Importantly, Plaintiffs have not disputed this assertion, apparently conceding that McMahon is neither a party to, nor a third-party beneficiary of, the Development Agreement, and that such a status is necessary for him to be empowered to bring a claim for breach of the contract. Plaintiffs' assertion that McMahon is a party to the collective group of "Loan Documents" is not a sufficient basis for standing to challenge a particular contract. See OEC-Diasonics, Inc. v. Major, 674 N.E.2d 1312, 1315 (Ind. 1996) ("The intent of the contracting parties to bestow rights upon a third party must affirmatively appear from the language *of the instrument* when properly interpreted and construed.") (emphasis added).

Based on our assessment, the only document that McMahon signed in his individual capacity was the Guarantee.[6] Thus, Defendants' Motion to Dismiss must be GRANTED as to Count Seven to the extent that it purports to state a claim on behalf of Mr. McMahon individually.

### IV.    *Counts Nine and Ten: Foreclosure Proceedings*

Lastly, Defendants seek the dismissal of Counts Nine and Ten of the Complaint as also failing to state claims upon which relief can be granted. Count Nine asserts a claim against Coachmen only, to wit, that it violated Indiana Code § 32-29-7-3[7] by failing to properly commence foreclosure proceedings against the real estate. Specifically, Plaintiffs maintain that Coachmen circumvented the statutory requirement by scheduling the real estate for public sale without filing any type of judicial complaint. Count Ten seeks injunctive relief against Coachmen based on this Indiana statute.

In support of their motion to dismiss these two counts, Defendants incorporate arguments made in their briefings regarding the preliminary injunction previously entered

---

[6] In any event, we question whether the Guarantee or the Development Agreement can be properly included within the category of "Loan Documents," which are defined in the Loan Agreement as "[the Loan Agreement] and all other agreements, instruments or documents executed by *Lender and/or Borrower* [therefore, Winforge and/or Coachmen] in furtherance of the Loans[.]" Loan Agreement at 5.

[7] Indiana Code §32-29-7-3 provides in relevant part:

> In a proceeding for the foreclosure of a mortgage executed on real estate, process may not issue for the execution of a judgment or decree of sale for a period of three (3) months after the filing of a complaint in the proceeding.

(and then dissolved) in this cause. Those arguments focused on choice of law issues governing the foreclosure sale, relating to the construance of the loan documents under Indiana law and/or Tennessee law. In our May 26, 2006, entry, we granted Plaintiffs' request for injunctive relief, stating that enforcement of the Deed of Trust (which is governed by Tennessee law) could not occur without a determination of the parties' rights and obligations under the other loan documents (to be governed by Indiana law). Therefore, though we enjoined a foreclosure sale at that time, we left undecided the issue of whether Section 32-29-7-3 applies, and, if so, whether Coachmen's actions were in violation of that statute.

Clearly, since the time of those initial briefings, the posture of this case has changed. Since we dissolved our injunction on October 5, 2006, we have no knowledge of whether Coachmen has proceeded with the foreclosure of the property, or whether any foreclosure proceedings have been commenced. Whether Coachmen must or did comply with the Indiana foreclosure statute is not before us at this time. From the face of the complaint, we cannot conclude that there is no basis under Count Nine for awarding relief under any set of facts. Therefore, we <u>DENY</u> Defendants' Motion to Dismiss Count Nine. Having previously ruled in favor of Plaintiffs on Count Ten's request for injunctive relief – despite its subsequent dissolution, due to Plaintiffs' failure to post the required bond – we hold that Count Ten is now moot and accordingly <u>GRANT</u> Defendants' Motion to Dismiss that claim.

For the reasons explicated above, we <u>GRANT</u> Defendants' Motion to Dismiss Counts One through Six, Count Seven to the extent it states a claim on behalf of Byron McMahon, and Count Ten. We <u>DENY</u> Defendants' Motion to Dismiss Count Nine. IT IS SO ORDERED.

Date: 03/13/2007

*[signature]*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Brent Emerson Inabnit
SOPKO NUSSBAUM & INABNIT
brenti@sni-law.com

Christopher M. Keefer
SOPKO NUSSBAUM & INABNIT
chrisk@sni-law.com

Richard Charles Richmond III
SOMMER BARNARD ATTORNEYS, PC
richmond@sommerbarnard.com